UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
-------------------------------------------------------------------- x

ATARAH REYNOLDS and TAMMY TUCK,
individually and on behalf of their similarly situated co-
workers,

      Plaintiffs,

    -against-

THE SECURITY, POLICE AND FIRE
PROFESSIONALS OF AMERICA AND
PARTICIPATING EMPLOYERS HEALTH AND
WELFARE BENEFIT PLAN, THE SECURITY,
POLICE AND FIRE PROFESSIONALS OF AMERICA
RETIREMENT PLAN, BOARD OF TRUSTEES OF
THE SECURITY, POLICE AND FIRE
PROFESSIONALS OF AMERICA AND
PARTICIPATING EMPLOYERS HEALTH AND
WELFARE BENEFIT PLAN, BOARD OF TRUSTEES
OF THE SECURITY, POLICE AND FIRE
PROFESSIONALS OF AMERICA RETIREMENT
PLAN, DWIGHT DULEY, DENNIS ECK, DAVID
HICKEY, GAIL FEUSEL, LESLIE KACIBAN, LARRY
SAYE,

      Defendants.

--------------------------------------------------------------------

           COMPLAINT

## **INTRODUCTION**

1.  This is an action for breach of fiduciary duty under Sections 409, 502(a)(2) and

502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29

U.S.C. §§ 1109, 1132(a)(2) and 1132(a)(3).  The defendants are (1) the Board of Trustees of the

Security, Police and Fire Professionals of America ("SPFPA") and Participating Employers

Health and Welfare Benefit Plan (the "H&W Plan"), (2) the Board of Trustees of the Security,

Police Fire Professionals of America Retirement Plan (the "401(k) Plan"), (3) the individual

Trustees of the H&W Plan, (4) the individual Trustees of the 401(k) Plan, (5) the 401(k) Plan

and (6) the H&W Plan. The plaintiffs bring this action individually and on behalf of their co-workers, who were employed by Paragon Systems, Inc. ("Paragon") and were covered by a collective bargaining agreement between Paragon and Local 443 of the SPFPA ("Local 443"). That agreement included an extraordinary provision providing for the transfer of all or a portion of contributions made by Paragon to the H&W Plan to the 401(k) Plan.

2.      As set forth below, the defendants breached their fiduciary duties in connection with their wrongful transfer and receipt of plan assets from one Plan to another, and in connection with their negligent oversight and administration of the transfers and receipt of such assets.  There was no reason for permitting such transfers, as opposed to separately funding each Plan, and there was certainly no benefit to the participants.  In addition, the plaintiffs and their co-workers were and continue to date to be kept in the dark about whether all required transfers have been made on their behalf, and their efforts to obtain accountings of the transfers have been either ignored, or only partially responded to by defendants through their attorneys.  The defendants, through their attorney, have consistently blamed third-party administrators for the non-transparent and ultimately chaotic manner of this process.  That is not a defense to the Trustees' fiduciary obligations, and simply compounds their defalcations.

3.      The plaintiffs and their co-workers are the first of the first responders charged with protecting federal courthouses and Department of Justice facilities in the nation's capital.  The events over the last several years in Washington, D.C. highlight the critical and essential role played by the plaintiffs.  They literally put their lives at risk every day when they report to work.  And yet, as set forth below, they have been denied meaningful retirement benefits by the defendants, and the retirement benefits they do receive have been provided only after substantial delays, and only when the defendants deem, without explanation, that retirement contributions are available from so-called

"excess residual contributions" made to the H&W Plan.  The circumstances are unfair to the plaintiffs, and they are product of the fiduciary breaches of the various defendants as described herein.  The defendants must account for their actions.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant to ERISA Section 502(e)(1), 29 U.S.C. § 1132 (e)(1), without respect to the amount in controversy or the citizenship of the parties, as provided in ERISA Section 502(f), 29 U.S.C. § 1132(f).

5.      Venue lies in this district under of ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the H&W Plan and 401(k) Plan are administered in Roseville, Michigan, which is within the geographical jurisdiction of this district.

6.      Pursuant to ERISA Section 502(h), 29 U.S.C. §1132(h), copies of this complaint, once filed with the court, shall be served by certified mail upon the United States Secretary of Labor and upon the United States Secretary of the Treasury.

## PARTIES

The Plaintiffs

7.      At all relevant times, plaintiffs, Atarah Reynolds and Tammy Tuck were employed by Paragon in a bargaining unit of approximately forty-eight Lead Court Security Officers and Lead Special Security Officers ("Leads") that was represented by Local 443. Paragon had a contract with the United States Marshals Service to provide security services at federal courthouses and other Justice Department facilities in Washington, D.C.  Paragon entered into a collective bargaining agreement with Local 443 that governed the terms and conditions of the plaintiffs' employment by Paragon.

8.      In October of 2022, an election was conducted by the National Labor Relations Board.  As a result of that election, Local 443 was decertified as the collective bargaining

representative of the Leads and was replaced by United States Court Security Officers ("USCSO").  Upon certification, USCSO demanded that Paragon cease sending bargaining unit members' health and welfare contributions to the SPFPA Plans, and Paragon agreed to stop. However, Paragon continued sending bargaining unit members' contributions to the SPFPA Plans until some point in December 2022.

The Defendants

9.      The individual Trustee defendants are the six members of the H&W Board of Trustees and the six members of the 401(k) Plan Board of Trustees.  Upon information and belief, the six individuals who are Trustees of the H&W Board of Trustees have been, for all material times and currently, the same six individuals who are the Trustees of the 401(k) Plan. The individuals who currently serve and/or have served as Trustees of the H&W Plan and the 401(k) Plan during times material to this complaint are Dwight Duley, Dennis Eck, David Hickey Gail Feustel, Leslie Kaciban, Jr., Rick Quinn, Donald Eagle, and Larry Saye. Each of the individuals is named as a defendant herein as Trustee of the H&W Plan, and separately as a defendant of the 401(k) Plan.  The Trustees have discretionary control of the Plans, and they are fiduciaries of the respective funds within the meaning of ERISA Section 3(21), 29 U.S.C. § 1002(21)(A).

The H&W Plan

10.      The defendant H&W Plan is an "employee benefit plan" and "multiemployer plan" within the meaning of ERISA Sections 3(3) and 3(37), 29 U.S.C. §§ 1002(3), 1002(37), with its principal place of business located in Roseville, Michigan. The Plan is jointly administered by the Trustees, who are made up of three labor and three employer representatives, as required by Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 186(c)(5).

11.     The H&W Plan is maintained pursuant to a Restated Agreement and Declaration of Trust dated November 6, 2006, as amended, and last restated on February 2, 2017 ("Trust Agreement") for the purposes of, inter alia, collecting and receiving contributions from employers bound to collective bargaining agreements with the SPFPA and/or SPFPA affiliated local unions, including Local 443.  The H&W Plan provides health and wealth, dental, vision, life insurance and related benefits to employees of contributing employers, including plaintiffs and their co-workers in the bargaining unit while they were covered by the Local 443 collective bargaining agreement with Paragon.

12.     The H&W Plan also functions as a collection agent for employer contributions made on behalf of certain employees of contributing employers to the 401(k) Plan, including plaintiffs for the period while they were covered by the Local 443 collective bargaining agreement.

13.     The H&W Plan is not alleged to be a fiduciary or to have breached fiduciary duties, but it has been named as a defendant to provide for complete relief requested in the complaint.

Board of Trustees of the H&W Plan

14.     The Defendant Board of Trustees of the H&W Plan has the sole authority, control, and direction of the H&W Plan.  The Trust Agreement of the H&W Plan states that the Defendant Board of Trustees "is hereby vested with all general and incidental powers reasonably necessary to operate and administer this Trust Fund and carry out the purposes of this Agreement and Declaration of Trust. Included in these powers is the authority to delegate or allocate such powers in the manner described herein. The express powers set forth in this Article, and elsewhere in this Agreement, are set forth by way of example, and not by way of limitation, unless the limitation is expressly provided for in connection with the description of a specific

power." At all times material to this action, the Board of Trustees and the individual members of the Board of Trustees have exercised these powers.

The 401(k) Plan

15. The Defendant 401(k) Plan is a defined contribution "employee benefit pension plan" and a "multiemployer plan" within the meaning of ERISA Section 3(2)(A) and 3(37), 29 U.S.C. §§ 1002(2)(A), 1002(37), with its principal place of business located in Roseville, Michigan. The 401(k) Plan is jointly administered by six Trustees, who are made up of three labor and three employer representatives, as required by Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 186(c)(5).

16. The 401(k) Plan is maintained pursuant to a trust agreement for the purposes of, inter alia, collecting and receiving contributions from employers bound to collective bargaining agreements with SPFPA and/or SPFPA affiliated local unions, including Local 443. The 401(k) Plan provides retirement benefits to employees of contributing employers, including plaintiffs and their co-workers in the bargaining unit. The 401(k) Plan receives all or some of the contributions made on behalf of its participants from the H&W Plan, which collects the contributions from the employers.

17. The Summary Plan Description for the 401(k) Plan advises participants that they can receive contributions from "excess Health & Welfare funds received on your behalf from the [H&W Plan]." It also advises participants that "[y]our employer may also make collectively bargained contributions to the H&W Plan with funds in excess of that allocated to pay for your insurance selections contributed to your retirement account."

18. The 401(k) Plan is not alleged to be a fiduciary or to have breached fiduciary duties, but it has been named as a defendant to provide for complete relief requested in the complaint.

<u>Board of Trustees of the 401(k) Plan</u>

19.     The Defendant Board of Trustees of the 401(k) Plan is responsible for the administration of the 401(k) Plan.  The Trust Agreement states that the Defendant Board of Trustees of the 401(k) Plan "is hereby designated as the person to receive contributions and the Board is vested with all right, title and interest in and to the Fund for the uses, purposes and duties set forth in this Trust Agreement and the Plan; provided, however, the Fund at all times shall be in the custody of the Custodian. The Board shall have the exclusive authority and discretion to manage and control the assets of the Fund." At all times material to this action, the Board of Trustees and the individual members of the Board of Trustees have exercised these powers.

## **CLASS ACTION ALLEGATIONS**

20.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of all persons similarly situated (the "Class").  The Class consists of the Leads who were employed by Paragon in the bargaining unit where plaintiffs were employed.

21.     Plaintiffs meet the prerequisites to bring this action on behalf of the Class because:

- Numerosity.  The Class consists of approximately 45 individuals and joinder of all members as individual plaintiffs is impracticable.

- Commonality.  Common questions of law and fact exist as to all members of the Class and predominate over any questions involving solely individual members of the Class.  Issues of law and fact common to the Class include: (a) the extent to which defendants owe a fiduciary duty to plaintiffs and members of the class; (b) whether defendants breached their fiduciary duties to plaintiffs and the Class

by failing to act prudently and in the interest solely of the participants and beneficiaries of the H&W and 401(k) Plans.Typicality.  Plaintiffs' claims are typical of the claims of the members of the Class because the members of the Class, including plaintiffs, all had individual accounts under the 401(k) Plan and were similarly impacted by defendants' wrongful conduct in violation of ERISA.

• Adequate Representation.  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have no interest antagonistic to or in conflict with the Class as whole.  Plaintiffs have retained counsel competent and experienced in ERISA litigation.  This action is maintainable as a class action for the following four independent reasons:

1. The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for defendants.

2. The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests.

3. Defendants have acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory or other

relief with respect to the Class as a whole under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).

4.    Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**FACTUAL BASIS FOR CLAIMS**

The CBA

22.    On or about June 14, 2018, Paragon and Local 443 entered into a collective bargaining agreement ("2018 CBA") under which health insurance would be provided to the Leads through the H&W Plan.  The 2018 CBA provided that effective October 1, 2018, Paragon would pay contributions in the amount of $4.60 per hour for health and welfare benefits.

23.    Pursuant to Appendix A of the 2018 CBA, employees were permitted to waive or "opt out" of health coverage through the Fund, if they could show proof of health coverage from a source other than Paragon and the Fund, in which case Appendix A also provided that "[r]esidual contributions shall be paid to the Union's 401(k) Plan."

24.    Appendix A to the 2018 CBA further provided that "[e]mployees who did not opt out of the [Health] plan shall have any residual contributions paid to the Union's 401k [plan]."

25.    "Residual contributions," as used in the 2018 CBA, referred to the excess of the cost of providing health benefits to the employees and their beneficiaries under the Plan, depending on the level of benefits chosen by the employee under the Plan.  For those employees opting out of coverage under the H&W Plan because they had other health coverage, the entire amount of Paragon's hourly health and welfare contribution constituted excess residual contributions and was transferable to the 401(k) Plan by the H&W Plan.

26.     The 401(k) Plan and the H&W Plan contributions transferable to the 401(k) Plan were the only retirement benefit provided to the Leads under the 2018 CBA.

Transfer of Residual Contributions

27.     The Trustees of the H&W Plan were solely responsible for determining the amount of "residual contributions" to be transferred to the 401(k) Plan, although their authority to do so is not set forth in the H&W Plan Trust Agreement or the 401(k) Plan Trust Agreement, and the basis for such decisions has never been made clear of an employee benefit plan be held for the sole benefit of the participants in the plan.  By determining some level of the contributions made to the H&W Plan to be "excess" or "residual" and thereby transferable to the 401(k) Plan, the Trustees of the H&W Plan had an unlawful conflict of interest in violation of their fiduciary duties to the H&W Plan and its participants under ERISA, which commands that the assets of an employee benefit plan be held for the sole benefit of the participants in that plan.

28.     The Trustees of the 401(k) Plan were responsible for receiving residual contributions and depositing these contributions into the separate employee accounts maintained by the Plan.  On information and belief, the Trustees of the 401(k) Plan did not participate in any determination of whether residual contributions were to be transferred from the H&W Plan to the 401(k) Plan.  Further, upon information and belief, the Trustees of the 401(k) Plan took no steps to oversee or monitor the timing of the transfers and took no steps to oversee or monitor the accuracy or basis for determinations of residual contributions.

29.     Beginning some time in 2021, the Trustees of the H&W Plan unilaterally imposed a service fee on employees, including plaintiff Reynolds, who had opted out of the H&W Plan.  Henceforth, instead of transferring 100% of such employees' "residual" contributions to the 401(k), the H&W Plan transferred only a portion of the contributions.

30.     During the period from 2019 through the Fall of 2022, contributions were paid by Paragon to the H&W Plan on plaintiff Reynolds' behalf.  Because plaintiff Reynolds opted out of coverage in the H&W Plan, all the Paragon contributions paid on her behalf were transferable to the 401(k) Plan, less, for some portion of the period, the service fee assessed by the Plan.  These transfers were consistently effectuated between three to five months late, and then, as explained below, stopped altogether for fourteen (14) months.

31.     Plaintiff Tuck also opted out of coverage under the H&W Plan, although defendants, through their agents, mistakenly defaulted Plaintiff Tuck into one of the medical plans provided by the H&W Plan. The result of this error was that the defendants deducted the cost of Ms. Tuck's health insurance before transferring her "residual" contributions to the 401(k) Plan, when her entire contribution, arguably, less the applicable service fee, should have been transferred to the 401(k) Plan.

Suspension of Transfer of Excess or Residual contributions and Notice of Modifications

32.     In or about the first half of 2021, the Trustees of the H&W Plan voted to suspend transfers of residual excess contributions relating to contributions made for hours worked on or after November 1, 2020.

33.     Upon information and belief, the last transfer of residual excess contributions before the suspension was on March 1, 2021, and represented residual excess contributions for hours worked by the plaintiffs and other covered participants through October of 2020.

34.     By letter to Plan participants, including plaintiffs, dated March 16, 2022, the H&W Plan Trustees explained that the suspension was "required due in part to extraordinary expenses resulting from the COVID 19 pandemic," and stated that "the H&W Trust has had nearly $6.2 million in COVID claims."   Defendants claimed that they suspended the calculations

to determine whether there were excess contributions for hours worked on and after November 1, 2021.

35.     In the March 16, 2022, letter, the H&W Plan Trustees claimed to have "previously communicated" with plaintiffs and other participants about the suspension.  The plaintiffs are unaware of any such prior communication from the Trustees, written or otherwise, concerning the suspension.  Upon information and belief, the March 16, 2022, letter was the first written notice sent to the plaintiffs and other participants about the suspension.

36.     Neither the 2018 CBA nor the Summary Plan Description for the H&W Plan or for the 401(k) Plan makes any reference to any right on the part of the H&W Plan's Trustees to suspend the calculation of excess contributions and the transfer of residual H&W contributions to the 401(k) Plan.  Indeed, the defendants' letter of March 16, 2022, advised falsely that the transfers to the 401(k) Plan of health and welfare contributions for those employees, like Ms. Reynolds, who opted out of or waived coverage under the Fund for whom there is no health benefit cost for the Plan, would continue without interruption.

37.     In the March 16, 2022, letter, the Trustees of the H&W Plan advised Fund participants, including plaintiffs, that residual contribution (referred to in the letter as "Pure Excess") transfers would resume, beginning with contributions made for hours worked in the first quarter of 2022, but that Pure Excess transfers for hours worked prior to January 1, 2022, would remain frozen.

The H&W Plan's Trustees' Third-Party Administrators

38.     On information and belief, for all times material to this complaint prior to in or about September of 2022, the defendants retained BeneSys, Inc. ("BeneSys") to serve as the H&W Plan's third-party administrator to administer the various benefits offered by the H&W

Plan.  On information and belief, BeneSys was responsible for, inter alia, the administration of the transfer of residual or excess contributions from the Plan to the 401(k) Plan.

39.     On information and belief, in or about September of 2022, defendants terminated BeneSys and hired Lawrence C. Musgrove Associates, Inc. ("Musgrove") to serve as third-party administrator for the H&W Plan.

40.     Until recently, and on information and belief, continuing to date, Musgrove failed to provide participants and beneficiaries with a website or any other electronic or non-electronic means for reviewing whether, when, and how much of the health and welfare contributions made on their behalf were transferred over into the 401(k) Plan.

The Plaintiffs' Health and Welfare Contributions and Transfers to the 401(k) Plan
Atarah Reynolds

41.     Atarah Reynolds was employed as a Lead by Paragon in the bargaining unit covered by the CBA.  Ms. Reynolds never received health insurance under the Plan, waiving coverage each year of her employment.

42.     Beginning in or about 2021, Ms. Reynolds was required to pay a "waiver fee" to the Plan of approximately $40 per month.

43.     Having waived health coverage under the H&W Plan, the health and welfare contributions paid to the H&W Plan by Paragon pursuant to the 2018 CBA on behalf of Ms. Reynolds should have been transferred in their entirety, arguably less the service fee, to the 401(k) Plan.

44.     Ms. Reynolds did a painstaking analysis with her own records to reconcile what had been contributed on her behalf to the H&W Plan compared to the deposits made by the H&W Plan into her 401(k) Plan account, and she determined that more than $3,000 in residual contributions were not transferred to her 401(k) Plan account.

45.     By email December 8, 2022, counsel for plaintiffs requested inter alia "to see a reconciliation of contributions paid in and expenses charged or allocated to [the plaintiffs] and the amount of "excess" calculated and transferred or potentially available for transfer to the 401(k) Plan."

46.     On March 25, 2023, almost four months from the initial reconciliation request, counsel for the H&W Plan claimed that that "the remaining frozen excess payments were transferred to participants accounts and I have confirmed with Principal [third party administrator for the 401(k) Plan] that this includes [Local] 443 members."  The requested reconciliation for Ms. Reynolds and the other named plaintiffs was not provided, nor, as defendants' counsel subsequently admitted, were all the excess contributions remitted to the 401(k) Plan, despite previous assurances that for employees, like Plaintiff Reynolds who had waived health coverage, the freeze did not apply and  all residual contributions had continuously been transferred.

47.     On or about April 21, 2023, plaintiffs' counsel shared information with the Plans' counsel detailing Ms. Reynolds' work records and reconciliation papers, concluding that "Ms. Reynolds is still owed over $3,000 by the H&W Trust."

48.     Finally, by email dated May 20, 2023, counsel for the defendants and the H&W Plan finally provided information tracking residual contributions transferred from the Plan to the 401(k) Plan on Ms. Reynolds' behalf.  Plan Counsel acknowledged, however, that Ms. Reynolds was still due residual contributions from the H&W Plan to the 401(k) Plan for the months of April through July 2022. The H&W Plan's Counsel then wrote:

> Please note that for the months April – July 2022, it appears that their funds that remain to be identified and transferred.  The Plan has retained a firm to review all participants/groups, including the former SPFPA Local 443 group, for this period. Upon completion of those reviews, any funds that have been identified will be

transferred. While we appreciate the delay that has occurred, the issues with the prior TPA [BeneSys] require that the Plan "audit" each account to ensure that the participants receive what they are owed.

49. On August 7, 2023, Plan and defendants' counsel emailed plaintiffs' counsel that he was still trying to obtain information from the Plan's service providers concerning the plaintiffs. He stated:

> As I suggested to you before, the Trust undertook the considerable task of reviewing 2022 transactions for all groups which has recently been substantially completed subject to finalization. It is my understanding that the goal is that any additional contributions identified from that review will be transferred later this month. I have asked whether the specific information as to whether there are additional contributions for the three participants you represent is available now and will provide it upon receipt.

Tammy Tuck

50. Plaintiff Tammy Tuck first became eligible for health coverage through the 2018 CBA and advised Fund service provider Brian Patten Associates, who conducted enrollment processing for the Plan at the relevant time, that she did not require health coverage. Notwithstanding this fact, Ms. Tuck was erroneously enrolled in one of the Plan's medical benefits plans.

51. The H&W Plan, through its Counsel, has taken the position that Ms. Tuck failed to properly opt out of coverage and was therefore enrolled by default. Ms. Tuck denies that she failed to properly waive coverage. Upon information and belief, in or about October 2022, an account was opened on Plaintiff Tuck's behalf in the 401(k) Plan, and she received a contribution into that account at that time,

52. By email dated January 31, 2023, in response to Plaintiffs' Counsel request made first on December 8, 2022, H&W Plan Counsel wrote:

> Ms. Tuck received health benefits, as a participant under the Copper Plan. As a result she was eligible for excess calculation. A transfer was made for to her account in December 2022 reflect excess funds received for September and

October 2022.  We await the former TPA records to determine whether she was entitled to and received excess transfers for earlier periods of 2022.

53.     Despite H&W Plan Counsel's statement, Ms. Tuck has not received no

accounting or any record whatsoever of deposits made to the 401(k) Plan on her behalf, except

for the contribution made in October of 2022.  Moreover, the records referred to by H&W Plan

Counsel in the January 31, 2023, email have still not been provided, and, as H&W Plan Counsel

wrote to plaintiffs' counsel on August 11, 2023, "I understand that the TPA is continuing to work

on the charts you requested for . . . Ms. Tuck."

<u>Recent Correspondence</u>

54.     Plaintiff Reynolds and other leads received a letter from the Board of Trustees of

the H&W Plan dated September 18, 2023, stating:

> Dear Member:
>
> The purpose of this letter is to provide you with an update regarding the results of a review conducted pertaining to benefits of the SPFPA and Participating Employers' Health & Welfare and Retirement Plans.
>
> Following the Trustees replacing the former administrator on August 1, 2022, the Trustees engaged an outside firm to conduct a retro review, as it is routine when there is substantial change in operations.
>
> The review determined that the former administrator failed to timely process certain waivers and excess contributions work periods [sic] beginning January 2022 through July 2022.
>
> You have been identified as missing the appropriate and adequate transfers from the H&W Plan to your 401k/Retirement Plan.  As such, you will see an additional contribution to your Retirement Plan Account (Login (principal.com).  Deposits will occur over the next 30 days.
>
> Although the market had a downturn/was negative for the review period, the Trustees have approved adding an interest credit of 3.0%, thus providing you with additional earnings.  The Trustees determined the additional interest credit is warranted due to the great patience shown by the members and their families.

The SPFPA Union, your Employer and The Funds' Board of Trustees are dedicated to ensuring your benefits are top in the nation and thank you for your patience during the transition.

55.    On or about September 21, 2023, Plaintiff Reynolds received a contribution into her 401(k) account in the amount of $1474.96, with no explanation of the amount.  Ms. Reynolds believes that this amount represents excess contributions due for April and May of 2023. Contributions for June and July of 2023 have still not been transferred into Ms. Reynolds' 401(k) Plan account .O

## FIRST CLAIM FOR RELIEF--AGAINST THE TRUSTEES OF H&W PLAN FOR BREACH OF FIDUCIARY DUTY UNDER ERISA § 404(a)(1)(A)

56.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth in this First Claim for Relief.

57.    The Trustees of both Plans had the fiduciary obligation under Section 404(a)(1)(A), 29 U.S.C. § 404(a)(1)(A), to act solely in the interest of the participants for the purpose of providing benefits and defraying administrative costs.

58.    The defendant Trustees of the H&W Plan failed to meet the foregoing standards by failing to provide adequate information to plaintiffs and their fellow Leads about the transfer of residual excess contributions from the Plan to the 401(k) Plan, including by failing to provide any transparency concerning the process used to compute the calculation of excess residual contributions, by freezing the transfer of excess residual contributions for months, including for those employees who had opted out of health coverage altogether, by failing to exercise due diligence in the retention, monitoring and replacement of third party administrators or other agents involved with the administration of the Plan in connection with calculation of excess contributions and their transfer to the 401(k) Plan, and by their failure to ensure adequate recordkeeping regarding the excess residual contributions and their transfer to the 401(k) Plan.

59.     As a result of the failure of the Trustees of the H&W Plan to act in the best interest of participants and the defendants' failure to act with required prudence, the Trustees have caused damage to the Plan and to plaintiffs and their co-workers.

**SECOND CLAIM FOR RELIEF—AGAINST THE TRUSTEES OF THE 401(k) PLAN FOR BREACH OF FIDUCIARY DUTY UNDER ERISA § 404(A)(1)(A)**

60.     Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth in this Second Claim for Relief.

61.     The Trustees of the 401(k) Plan breached their fiduciary obligation under ERISA § 404(a)(1)(A) to act in the sole interest of plaintiffs and their co-workers by failing to take any steps to ensure the timely and accurate transfer of excess residual contributions from the H&W Plan to the 401(k) Plan, by failing to take any steps to investigate the unilateral freeze of contributions and the unilateral imposition of a service fee on participants, regardless of whether or not they were covered by the H&W Plan, by failing to exercise due diligence in the retention, monitoring, and replacement of third party administrators or other agents involved in the administration of the 401(k) Plan, including the receipt of excess contributions from the H&W Plan, and by failing to ensure that plaintiffs and their co-workers could receive timely and appropriate accountings of the transfer of any excess residual contributions.

62.     As a result of the failure of the Trustees of the 401(k) Plan to act in the best interest of participants and the defendants' failure to act with required prudence, the Trustees have caused damage to the 401(k) Plan and to plaintiffs and their co-workers.

**THIRD CLAIM FOR RELIEF—AGAINST THE TRUSTEES OF THE H&W PLAN FOR BREACH OF FIDUCIARY DUTY UNDER ERISA SECTION 404(A)(1)(B)**

63.     Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth in this Third Claim for Relief.

64.     The Trustees of the H&W Plan had the fiduciary obligation under Section 404(a)(1)(B) to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

65.     The defendant Trustees of the H&W Plan failed to meet the foregoing standards by failing to provide adequate information to plaintiffs and their fellow Leads about the transfer of residual excess contributions from the Plan to the 401(k) Plan, including by failing to provide any transparency concerning the process used to compute the calculation of excess residual contributions, by freezing the transfer of excess residual contributions for months, including for those employees who had opted out of health coverage altogether, by failing to exercise due diligence in the retention, monitoring and replacement of third party administrators or other agents involved with the administration of the Plan in connection with calculation of excess contributions and their transfer to the 401(k) Plan, and by their failure to ensure adequate recordkeeping regarding the excess residual contributions and their transfer to the 401(k) Plan.

66.     As a result of the failure of the Trustees of the H&W Plan to act with the prudence required under ERISA § 404(a)(1)(B), the Trustees have caused damage to the Plan and to plaintiffs and their co-workers.

### FOURTH CLAIM FOR RELIEF—AGAINST THE TRUSTEES OF THE 401(k) PLAN FOR BREACH OF FIDUCIARY DUTY UNDER ERISA SECTION 404(A)(1)(B)

67.     Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth in this Fourth Claim for Relief.

68.     The defendant Trustees of the 401(k) Plan failed to meet the fiduciary standards of prudence under ERISA 404(a)(1)(B) by failing to take any steps to ensure the timely and accurate transfer of excess residual contributions from the H&W Plan to the 401(k) Plan, by failing to take any steps to investigate the unilateral freeze of contributions and the unilateral imposition of a service fee on participants, regardless of whether or not they were covered by the H&W Plan, by failing to exercise due diligence in the retention, monitoring, and replacement of third party administrators or other agents involved in the administration of the 401(k) Plan, including the receipt of excess contributions from the H&W Plan, and by failing to ensure that plaintiffs and their co-workers could receive timely and appropriate accountings of the transfer of any excess residual contributions.

69.     As a result of the failure of the Trustees of the 401(k) Plan to act with the required prudence under ERISA Section 404(a)(1)(B), the Trustees of the 401(k) Plan have caused damage to the Plan and to plaintiffs and their co-workers.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, plaintiffs request that the Court enter judgment:

1.     Ordering the H&W Plan Defendant Trustees to conduct an immediate audit and reconciliation to determine whether additional contributions should have been transferred from the H&W Plan to the appropriate accounts in the 401(k) Plan.

2.     Ordering the 401(k) Plan Defendant Trustees to provide accurate and timely information to plaintiffs and their co-workers, retroactively and prospectively, relating to the any transfer of excess residual contributions.

3.      Ordering the defendants to be jointly and severally liable for any losses to the Fund arising from their fiduciary breaches in connection with the transfers of residual excess contributions.

4.      Providing whatever additional legal or equitable relief that the Court may deem just and proper, including injunctive relief where warranted.

Dated: Southfield, MI
       December 6, 2023

Jani K. Rachelson (admission to be sought)
Bruce S. Levine (admission to be sought)
Cohen, Weiss and Simon LLP
909 Third Avenue
New York, NY  10022
(212)563-4100
blevine@cwsny.com

_____
Mark Cousens P12273
26261 Evergreen, Suite 130
Southfield, MI  48076
(248)355-2150
cousens@cousenslaw.com

*Attorneys for Plaintiffs*