UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATARAH REYNOLDS et al.,

       Plaintiffs,

v.

SECURITY, POLICE & FIRE
PROFESSIONALS OF AMERICA AND
PARTICIPATING EMPLOYERS HEALTH
AND WELFARE BENEFIT PLAN et al.,

       Defendants.
_____/

Case No. 23-cv-13099

HON. MARK A. GOLDSMITH

**OPINION & ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 10)**

Plaintiffs Atarah Reynolds and Tammy Tuck bring this case individually and on behalf of their similarly-situated co-workers against Defendants (i) the Board of Trustees of the Security, Police and Fire Professionals of America (SPFPA) and Participating Employers Health and Welfare Benefit Plan (the H&W Plan); (ii) the Board of Trustees of the SPFPA Retirement Plan (the 401(k) Plan); (iii) the individual Trustees of the H&W Plan; (iv) the individual Trustees of the 401(k) Plan; (v) the 401(k) Plan; and (6) the H&W Plan. Plaintiffs allege breach of fiduciary duties in connection with Defendants' transfer of funds between benefit plans.

Before the Court is Defendants' motion to dismiss (Dkt. 10). For the reasons stated below, the Court grants the motion.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing also includes Plaintiffs' response (Dkt. 16) and Defendants' reply (Dkt. 17).

1

## I. BACKGROUND

Plaintiffs' claims arise out of their employment by Paragon Systems, Inc. Compl. ¶ 1 (Dkt. 1). Plaintiffs and putative class members were initially parties to a collective bargaining agreement (CBA) between Paragon and Local 443 of the SPFPA, their labor union. Id. The SPFPA provides two multiemployer benefit plans for its union members: (i) the Health and Welfare Benefit Plan (H&W Plan); and (ii) the 401(k) Plan. Id. Paragon funded the H&W Plan. Id. The CBA between Paragon and SPFPA provided that, in certain circumstances, Paragon would transfer "residual contributions" from the H&W Plan to the 401(k) Plan. Id. ¶¶ 24–25. According to the complaint, "residual contributions . . . referred to the excess of the cost of providing health benefits to the employees and their beneficiaries under the [H&W] Plan, depending on the level of benefits chosen by the employee under the Plan." Id. ¶ 25.

In October 2022, Plaintiffs and putative class members switched unions and became members of the United States Court Security Officers (USCSO) instead. Id. ¶ 8. According to the complaint, when the USCSO replaced the SPFPA, the USCSO requested that Paragon cease making contributions to the H&W Plan and, in December 2022, Paragon stopped making such payments. Id.

Reynolds alleges that, for a period of time, the H&W Plan suspended the payment of residual contributions from the H&W Plan into the 401(k) Plan. Id. ¶¶ 30, 32–33. On September 18, 2023, the H&W Plan sent a letter to Reynolds informing her that it would be transferring additional amounts to her account in the 401(k) Plan, reflecting residual contributions under the CBA for the period from January 2022 through July 2022. Id. ¶ 54. Reynolds further alleges that, three days after receiving this letter, on September 21, 2023, she received an additional payment from the H&W Plan into her 401(k) Plan account in the amount of $1,474.76. Id. ¶ 55. She alleges

that this transfer is short of what she is owed and that the full amount of the contributions she is owed has still not been transferred into her 401(k) Plan account.  Id.

Tuck alleges that, in 2018, she opted out of health insurance coverage under the H&W Plan, but nevertheless "was erroneously enrolled in one of the Plan's medical benefits plans."  Id. ¶ 50.  She further alleges that counsel for the H&W Plan advised her counsel that "[a] transfer [for residual contributions under the CBA] was made for [sic] to her [401(k) Plan] account in December 2022 reflect[ing] excess funds received for September and October 2022.  We await the former TPA records to determine whether she was entitled to and received excess transfers for earlier periods of 2022."  Id. ¶ 52.

More generally, Plaintiffs allege dissatisfaction with the way Defendants handled the transfer of residual contributions.  For example, they allege that the "Trustees of the H&W Plan were solely responsible for determining the amount of 'residual contributions' to be transferred to the 401(k) Plan, although their authority to do so is not set forth in [the relevant agreements], and the basis for such decisions has never been made clear . . . ," id. ¶ 27, and that the "Trustees of the 401(k) Plan took no steps to oversee or monitor the timing of the transfers and took no steps to oversee or monitor the accuracy or basis for determinations of residual contributions," id. ¶ 28.

Plaintiffs brought this suit on December 6, 2023.  They allege breach of fiduciary duty under Section 404 of the Employee Retirement Income Security Act of 1974, (ERISA), 29 U.S.C. § 1104, premised on Defendants' actions regarding the payment of residual contributions from the H&W Plan into the 401(k) Plan.

Defendants move to dismiss the complaint in its entirety.  They argue that (i) Plaintiffs cannot bring an action for breach of fiduciary duty where they seek relief that can be obtained by bringing a denial-of-benefits claim, (ii) Plaintiffs have failed to plead that they have adequately

3

exhausted the required administrative remedies before filing suit, and (iii) Plaintiffs have failed to state a claim for breach of fiduciary duty.[2] Because the Court agrees with the Defendants on the first two grounds, it does not reach the third.

## II. ANALYSIS[3]

### A. Cause of Action

Defendants argue that Plaintiffs' allegations do not amount to a cause of action for breach of fiduciary duty. See Mot. at 8–12. They argue that, while Plaintiffs nominally bring a claim for breach of fiduciary duty, the substance of their claim is that of a claim for denial of benefits. Id. They contend that Plaintiffs allege that the H&W Plan failed to make sufficient residual contribution payments to the 401(k) Plan, in a manner contrary to the governing CBA, and that this claim must be brought under ERISA § 502(a)(1)(B)—which affords plan participants redress if their benefits are denied—and may not be brought as a claim for breach of fiduciary duty. Id. at 8.

In response, Plaintiffs argue that Defendants have "mischaracterize[d]" the complaint. Resp. at 14. They argue that neither Plaintiff ever applied for benefits nor appealed from the denial

---

[2] Defendants additionally argue that (i) the Plans are not proper defendants to the lawsuit, see Mot. at 1 n.1, and (ii) Plaintiffs' claims against the individual Defendants should be dismissed for failure to allege sufficient facts, see id. at 7 n.7. Because the Court is dismissing the complaint in its entirety on other grounds, it need not address these arguments.

[3] To survive a motion for judgment on the pleadings, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 480 (6th Cir. 2020) (explaining that the Twombly pleading standard applies to 12(c) motions). "Courts must accept as true all well-pleaded factual allegations . . . ." Bates, 958 F.3d at 480. A plaintiff plausibly pleads a claim for relief if his or her allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (punctuation modified).

4

of plan benefits, so their claim is not one for denial of benefits, and that the "broad[,] plan-wide" relief they seek is not available under § 502(a)(1)(B).

Defendants are correct that claims made by plan participants or beneficiaries "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan or to clarify [their] rights to future benefits under the terms of the plan" must be brought under ERISA § 502(a)(1)(B). 29 U.S.C. § 1132 (a)(1)(B). The Sixth Circuit has held that claims that fall within the ambit of Section 502(a)(1)(B) may not be brought under other provisions of ERISA. See Strang v. Ford Motor Co. Gen. Ret. Plan, 693 F. App'x 400, 405 (6th Cir. 2017) ("[W]here an avenue of relief for the injury was available under § 1132(a)(1)(B) . . . a breach-of-fiduciary-duty claim cannot be brought."); see also Rochow v. Life Ins. Co. of North Am., 780 F.3d 364, 372 (6th Cir. 2015) (explaining that a plaintiff may not "repackage a claim for benefits wrongfully denied as a cause of action for breach of fiduciary duty" and concluding that an ERISA ¶ 404(a) breach of fiduciary duty claim under the ¶ 503(a)(3) catchall provision was "unnecessary and unavailable" because ERISA ¶ 502(a)(1)(B) provided an adequate remedy). Rather, "[a] claimant can pursue a breach-of-fiduciary-duty claim . . . only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate." Id. (emphasis in original).

Plaintiffs allege breach of fiduciary duty under ERISA § 404 and seek relief under ERISA §§ 409, 502(a)(2) and 502(a)(3). Section 409 provides for the imposition of broad relief against a person "with respect to a plan," including personal liability for plan losses caused by a fiduciary breach, and "other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." Section 502(a)(2) authorizes plan beneficiaries to bring derivative

5

breach of fiduciary duty claims seeking recovery on behalf of the plan, while § 502(a)(3) allows a plan participant "to obtain other appropriate equitable relief (i) to redress . . . violations [of ERISA] or (ii) to enforce any provisions of [ERISA] or the terms of the plan." This is the avenue through which plaintiffs can assert fiduciary duty claims on their own behalf in order to obtain "appropriate equitable relief." Clark v. Ford Motor Co., 430 F. Supp. 3d 265, 277 (E.D. Mich. 2019). But these remedies for breach of fiduciary duty are available only where the denial-of-benefits remedy is inadequate. Id. at 277–278 (holding that fiduciary duty claims brought pursuant to §§ 409 and 502(a)(2) may not be brought where a denial-of-benefits claim would afford the plaintiff complete relief); Rochow, 780 F.3d at 372–373 (holding the same in the context of a claim brought pursuant to § 502(a)(3)).

Plaintiffs allege breach of fiduciary duty. They state that they "and their co-workers were and continue to date to be kept in the dark about whether all required transfers have been made on their behalf, and their efforts to obtain accountings of the transfers have been either ignored, or only partially responded to by defendants through their attorneys." Compl. ¶ 2. But simply including allegations of breach of fiduciary duty is not enough to state such a claim under ERISA. Rather, as emphasized by the Sixth Circuit in Rochow, 780 F.3d at 371, a plaintiff may only bring a claim for breach of fiduciary duty under ERISA where § 502(a)(1)(B)—the section regarding denial of benefits—does not provide "adequate relief for a beneficiary's injury." "ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing." Id.

Plaintiffs have not satisfactorily explained why § 502(a)(1)(B) would not provide them with complete relief here. In fact, the allegations made and relief requested by Plaintiffs indicate that § 502(a)(1)(B) would be sufficient.

6

To begin with, Plaintiffs make individualized claims for denial of benefits. For example, they explicitly allege that they "have been denied meaningful retirement benefits by the defendants." Compl. ¶ 3. Reynolds asserts that the H&W Plain's lump sum payment of residual contributions into her 401(k) Plan account shorted her by two months and must be recalculated, id. ¶ 55, and Tuck asserts she was mistakenly defaulted into insurance coverage she says she opted out of and, therefore, her residual contributions under the CBA should be recalculated to afford her greater benefits. Id. ¶¶ 50–51.

Moreover, in terms of relief, Plaintiffs request that the court enter a judgment: (i) "[o]rdering the H&W Plan Defendant Trustees to conduct an immediate audit and reconciliation to determine whether additional contributions should have been transferred from the H&W Plan to the appropriate accounts in the 401(k) Plan; (ii) "[o]rdering the 401(k) Plan Defendant Trustees to provide accurate and timely information to plaintiffs and their co-workers, retroactively and prospectively, relating to the [sic] any transfer of excess residual contributions"; (iii) "[o]rdering the defendants to be jointly and severally liable for any losses to the Fund arising from their fiduciary breaches in connection with the transfers of residual excess contributions"; and (iv) "[p]roviding whatever additional legal or equitable relief that the Court may deem just and proper, including injunctive relief where warranted." Compl. at PageID.20–21.

This relief is related to Plaintiffs' allegations regarding their own benefits—and any potential shortfall. Because this relief could be achieved through a denial of benefits claim, Plaintiffs' claims fall within § 502(a)(1)(B), and Plaintiffs may not bring those claims under other provisions of ERISA. Strang, 693 F. App'x at 405 ("[W]here an avenue of relief for the injury was available under § 1132(a)(1)(B) . . . a breach-of-fiduciary-duty claim cannot be brought.").

7

In their briefing, Plaintiffs rely heavily on Hill v. Blue Cross and Blue Shield of Mich., 409 F.3d 710, 717 (6th Cir. 2005), in which the Sixth Circuit overturned a district court's dismissal of a 502(a)(3) claim on the ground that the 502(a)(3) claim was a repackaged claim for individual benefits and did not constitute an actionable fiduciary duty claim. In reversing the dismissal, the Sixth Circuit explained that both monetary relief (for the individual claimants) and injunctive relief (for the entire class of plan members) were necessary to make the plaintiffs whole. Id. at 718 ("[A]n award of benefits to a particular Program participant based on an improperly denied claim . . . will not change the fact that [defendant] is using an allegedly improper methodology for handling [all claims]."). The Hill decision is the reason why the parties spend time discussing the individual versus class-wide allegations in the complaint. It "distinguished between the denial of individual claims and plan-wide mishandling of claims as two distinct injuries," creating an exception to the repackaging rule when a plaintiff seeks plan-wide relief. Rochow, 780 F.3d at 373; see also Holmes v. FCA US LLC, No. 5:20-cv-13335, 2022 WL 2402655, at *9 (E.D. Mich. Mar. 8, 2022) report and recommendation adopted, 2022 WL 6736294 (E.D. Mich. Oct. 11, 2022) (explaining that the Sixth Circuit in Hill allowed the 502(a)(3) claim to proceed "because it recognized that it was addressing a separate and distinct injury to the entire class that could only be remedied with an injunction") (emphasis in original).

Recent opinions from the Sixth Circuit and this district have made clear that basic allegations alone of class-wide injury will not qualify a claim as falling under the exception established in Hill. See, e.g. Outward v. Eaton Corp. Disability Plan for U.S. Emps., 808 F. App'x 296, 315 (6th Cir. 2020); Holmes, 2022 WL 2402655, at *9. In Outward, 808 F. App'x at 315, the court limited the plaintiff to claims under § 502(a)(1)(B) and affirmed the dismissal of her breach of fiduciary duty claims, explaining that while the plaintiff asserted "perfunctorily that her

8

breach-of-fiduciary-duty claim is an effort to change an overly restrictive plan interpretation for the benefit of all beneficiaries," in fact, it was primarily plaintiff who would benefit from the relief sought. In Holmes, 2022 WL 2402655, at *9, the court found that the Hill exception did not apply where plaintiff alleged that defendant's interpretation of a plan "impact[ed] and affect[ed] other Plan members and beneficiaries" and requested that defendant be enjoined from that interpretation because "a perfunctory allegation of plan-wide harm does not bring a [§ 502(a)(3)] claim into the Hill exception."

Plaintiffs have not adequately alleged a plan-wide deficiency such that the Hill exception would apply. The allegations in the complaint allege issues unique to Plaintiffs' own benefits. In particular, Plaintiffs allege that Reynolds should have received greater residual payments for two months, Compl. ¶ 55, but not that this error occurred for any other employee in Local 443 or was based on a methodology affecting others. Plaintiffs allege that Tuck was "erroneously enrolled in one of the Plan's medical benefits plans," id. ¶ 50, but not that any others were mis-enrolled. Plaintiffs argue that they seek to benefit the class as a whole by enjoining Defendants "from using contributions . . . to pay for plan-wide medical costs," Resp. at 14, but admit that their employer (Paragon) is no longer contributing to the H&W Plan on behalf of putative class members, Compl. ¶ 8. In other words, there are no contributions to be enjoined. Similarly, Plaintiffs' perfunctory request for accounting and transparency regarding residual transfers, Resp. at 14, is hardly a plan-wide issue. This is information their counsel has sought concerning the "transfer of contributions from the H&W Plan to their 401(k) accounts." Resp. at 18.

Accordingly, the Court concludes that Plaintiffs' claims for breach of fiduciary duty are actually denial-of-benefits claims and must be dismissed because they were not brought under § 502(a)(1)(B). Further, as explained below, Plaintiffs are required to exhaust the applicable

9

administrative remedies before bringing claims under § 502(a)(1)(B). Miller v. Metro Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991). Because they have not pleaded such exhaustion, Plaintiffs cannot simply replead their breach of fiduciary duty claims as a claim for denial of benefits.

**B.      Exhaustion**

Defendants also argue that Plaintiffs have failed to exhaust their administrative remedies. See Mot. at 12–15. In response, Plaintiffs acknowledge that "[b]oth Plans warn participants that they are required to exhaust their administrative remedies to appeal a denial of benefits." Resp. at 17. They do not argue that they have pleaded that they satisfied such requirements; rather, Plaintiffs argue that they were not required to exhaust administrative remedies before proceeding with their fiduciary duty claims. Resp. at 17–18. The Court agrees with Defendants that Plaintiffs were required to exhaust their administrative remedies and have failed to plead that they have done so.

"The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court" for a denial-of-benefits claim. Miller, 925 F.2d at 986 (6th Cir. 1991). This requires Plaintiffs to proceed first through any grievance or appeals process provided in the ERISA plan at issue. See 29 U.S.C. § 1133(2). The exhaustion requirement, however, does not apply to statutory claims alleging violations of ERISA, such as a claim for breach of fiduciary duty. Hitchcock v. Cumberland Univ., 851 F.3d 552, 565 (6th Cir. 2017). Because, as explained above, Plaintiffs cannot bring this suit as a fiduciary duty claim, they were required to exhaust their remedies before bringing this claim for denial of benefits.[4]

---

[4] As Defendants note, the Sixth Circuit stated in Hitchcock, 851 F.3d at 565, that the exhaustion requirement applies to "plan-based claims artfully dressed in statutory clothing, such as where a

10

Plaintiffs argue that, even if exhaustion of administrative remedies was required for their claims, exhaustion would be futile, which excuses the requirement. Resp. at 18. In support of their claim of futility, they argue that "Plaintiffs and their attorneys were repeatedly stonewalled in their efforts over the better part of 2023 to obtain basic information from the [D]efendants through their counsel concerning the transfer of contributions from the H&W Plan to their 401(k) accounts. . . . Throughout this time, [D]efendants' counsel continually promised and then failed to provide this most basic information." Id.

The Sixth Circuit has stated that "[t]he standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998). "A plaintiff must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." Id. (punctuation modified). The paragraphs in the complaint that deal with this alleged "stonewalling," see Compl. ¶¶ 45–53, do not rise to the level of futility required to excuse Plaintiffs from complying with exhaustion requirements. Plaintiffs appear to allege only that Defendants were slow to provide information. Id. Where they allege that information remains outstanding, they acknowledge that Defendants have sent messages stating that the information would be provided when available. Id. ¶¶ 49, 53. These allegations do not provide any "clear and positive indication of futility."

Because Plaintiffs have failed to allege that they complied with the exhaustion requirements—and have not even argued compliance—their claims must be dismissed for that reason as well.

---

plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty." Mot. at 12.

### III. CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss in its entirety (Dkt. 10).

SO ORDERED.

Dated: February 21, 2025
       Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge